UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANE DOE, | Civil No. 3:21cv0290 (JBA) |
| *Plaintiff,* | January 31, 2023 |
| *v.* | |
| NORWALK BOARD OF EDUCATION, JOHN RAMOS, and LISE KRIEGER | |
| *Defendants.* | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Defendants Norwalk Board of Education ("Defendant Board") and former Norwalk High School Principal John Ramos move for summary judgment on Count Three (negligence under Conn. Gen. Stat. § 52-557n.), Count Four (violations of Title IX, 20 U.S.C. 1681(a)), and Count Five (respondeat superior) of Plaintiff's Amended Complaint.[1] Defendants argue that as to Counts Three and Five, the Board of Education and John Ramos are entitled to governmental immunity under Conn. Gen. Stat. § 52-557n. (Defs.' Mot. for Summ. J. [Doc. # 35].) As to Count Four, Defendants argue that they did not have actual notice of the alleged sexual abuse, nor were they deliberately indifferent to it, two prerequisites for liability under Title IX. (*Id.*) Plaintiff argues that Defendants are not entitled to governmental immunity because the alleged conduct falls within an exception abrogating immunity; she also argues

---

[1] Counts 1 and 2 are against Lise Krieger, former Norwalk High School teacher; Defendant Krieger has not joined or responded to the summary judgment motion or moved for summary judgment independently.  Any reference to "Defendants" throughout refers only to Defendants Board and Ramos unless otherwise specified.

both that the Defendants Board and Ramos had actual knowledge of her sexual abuse and that they were deliberately indifferent to it. (Pl.'s Opp'n to Summ. J. [Doc. # 36].)

## I.     Factual Background

During her time in high school, Plaintiff struggled with alcoholism and regularly attended school "in a state of intoxication." (Defs.' Loc. R. 56(a)(1) Stmt. [Doc. # 35-1] ¶¶ 1a, 1b.) Plaintiff's freshman year English teacher Defendant Lise Krieger, a recovering alcoholic, corresponded with Plaintiff through notes about alcohol abuse and the importance of sobriety. (*Id.* ¶¶ 2a, 2b.) These notes encouraged Plaintiff to seek help for her alcoholism. (*Id.*) Defendants maintain that nothing about these notes was sexually or personally inappropriate; as an adult, Plaintiff came to understand that they were "grooming tactics," although she did not view them as such at the time. (*Id.* ¶¶ 2d, 2e; Pl.'s Local R. 56(a)(2) Stmt. Of Material Facts in Opp'n [Doc. #36-1] ¶ 2e.) Defendant Krieger took Plaintiff to her first Alcoholics Anonymous meeting, and after the meeting, gave Plaintiff a hug while they sat in the car together, remaining in their respective seats. (Defs.' Loc. R. 56(a)(1) Stmt ¶¶ 2f, 2g.) After that meeting, Plaintiff revealed her alcoholism to her parents and went to an alcohol rehabilitation facility for 60 days during July and August of 1989. (*Id.* ¶¶ 3a, 3b.)

That same summer, Defendant Krieger and Plaintiff's mother had a conversation about Plaintiff's alcoholism. (*Id.* ¶ 4a.) Plaintiff's mother "did not express any concerns to [Krieger] that there was an inappropriate relationship between [Krieger] and [Plaintiff]" at that time. (*Id.*) However, Plaintiff's mother's perspective changed when she found an "encouraging note" (the "Krieger Letter") in Plaintiff's bedroom that Defendant Krieger wrote Plaintiff before she entered rehab. (*Id.* ¶ 4e.) In her deposition, Plaintiff stated that the "content of the letter had to do with, again, [Krieger's] personal life, how she felt deeply for me, how she didn't want anything to happen to me. How she would basically do anything that she could to help me and ensure that I wouldn't go down a negative path having to do

with alcoholism." (Pl. Doe's Dep. Tr. [Doc. # 35-2] at 38.) Plaintiff's mother also became aware that Defendant Krieger had taken Plaintiff to an AA meeting "under the pretext of taking [her] to a child development course." (*Id.* 66-67.)

Both sides agree that Plaintiff's mother submitted a complaint to the school officials concerning Defendant Krieger that was prompted at least in part by the Krieger Letter. (*See* Defs.' Loc. R. 56(a)(1) Stmt. ¶ 5, Pl.'s Loc. R. 56(a)(2) Stmt. In Opp'n ¶ 5, Pl. Doe's Dep. at 34-35, 47.) At oral argument, the parties confirmed that the record is unclear what form Plaintiff's mother's complaint to the school took; there is no copy of a written complaint that the parties could locate, and there is no remaining witness that can confirm whether the complaint was made in writing or verbally, over the phone or in-person. The parties disagree on what the complaint's primary focus was; Defendants claim that it centered on the Krieger Letter and "concerns about [Krieger's] supportive interaction with her daughter" (Defs.' Loc. R. 56(a)(1) Stmt. ¶ 5). Plaintiff agrees in part, but also asserts that the complaint raised concerns over "the fact that [Plaintiff] was becoming obsessed with [Krieger]," and that it "likely included [Plaintiff's] mother[']s concern that the undue attention [Krieger] was giving [Plaintiff] was sexually motivated," as contained in her July 1989 letter ("Mother's Letter") to Plaintiff about her own experience with a woman who "claimed she was trying to help her but ultimately demanded sex in return for this help," and her concerns about the closeness between Plaintiff and Defendant Krieger. (Pl.'s Loc. R. 56(a)(2) Stmt. In Opp'n ¶ 5, Pl.'s Opp'n Exhibit D [Doc. # 36-4].) While Plaintiff believes that the contents of this letter likely would have translated to a concrete expression of concern about the risk of sexual intimacy, she does not claim that the Mother's Letter was shown to, sent to, or directly referenced in conversation with any member of the Board or Ramos.

Following Plaintiff's mother's complaint, Defendant Krieger received a call from the school's HR Department instructing her to attend a "meeting" about "concerns" regarding

Krieger and her relationship with Plaintiff. (Defs.' Loc. R. 56(a)(1) Stmt. ¶¶ 6a, 6b, 6f; Pl.'s Loc. R. 56(a)(2) Stmt. In Opp'n ¶¶ 6a, 6b, 6f.) The meeting was attended by an HR representative[2], Krieger, and the late Mr. Dunlap who was principal at Norwalk High before Ramos and was Assistant Superintendent at the time of the meeting; Plaintiff and her mother were not present. (Defs.' Loc. R. 56(a)(1) Stmt. ¶¶ 6b, 6d.) According to Defendant Krieger's deposition, the HR representative said that Plaintiff's mother "had complained that there were letters and was concerned about [Plaintiff's] obsession with me . . . and then it was suggested that I was going to be moved to Brian McMahon [school]." (Krieger Dep. Tr. Def.'s Mot. Exhibit D [Doc. # 35-2] at 61.) The meeting "did not constitute a disciplinary 'hearing' at which [Krieger] would have been represented by a Union rep," (Defs.' Loc. R. 56(a)(1) Stmt. ¶ 6e), and she "does not believe there was any notation or documentation ever placed in her personnel file" as a result. Krieger's file contained no record of either the meeting or any limitation on contact between Defendant Krieger or Plaintiff. (*Id.* ¶ 6j, 6k.) Subsequently, after a union rep became involved in the transfer discussion, it was decided that Defendant Krieger would not be transferred to Brian McMahon. (*Id.* at 62)

Ramos was principal at the time of the meeting but was not present for it. (Defendant John Ramos Dep. Tr., Defs.' Mot. Exhibit C, [Doc. # 35-2] at 19; Defs.' Loc. R. 56(a)(1) Stmt. ¶ 6c). He testified he was never made aware of the complaint by Plaintiff's mother; he was told of the meeting that took place between Krieger, Dunlap, and the HR Representative by Mr. Dunlap, but claims to have no recollection of being told what the reason for the meeting was. (Ramos Dep. at 24-25.) According to Ramos, "nothing was said that would cause me to take action." (*Id.* at 29.) Plaintiff has no knowledge of whether Ramos was directly aware of what

---

[2] Defendants' counsel confirmed at oral argument that the Defendants have been unable to determine the identity of the HR representative at this meeting.

happened during the meeting, and no complaint was ever filed with him directly, but she reasons that based on Ramos' recollection of being told of the meeting, a jury could "infer" that Ramos was informed of Plaintiff's mother's concerns. (Pl.'s Loc. R. 56(a)(2) Stmt. In Opp'n ¶¶ 8a-8d.)

At the time of the meeting, there had been no sexual contact between Plaintiff and Defendant Krieger. (Defs.' Loc. R. 56(a)(1) Stmt. ¶ 5f.) The first time Plaintiff recalls having sexual intercourse with Krieger was in 1989 during her sophomore year of high school; Plaintiff was not in Krieger's classes at the time. (Pl.'s Dep. at 168.) Defendant Krieger denies having had any sexual contact with Plaintiff while she was under the age of 18 and a student at Norwalk High School. (Krieger Dep. at 81.) The complaint filed by Plaintiff's mother that prompted the meeting is the only complaint that Plaintiff is aware of by anyone regarding her relationship with Defendant Krieger, and she is not aware of any complaint being filed in the period following the meeting, during which time she claims she and Krieger became sexually intimate. (Defs.' Loc. R. 56(a)(1) Stmt. ¶¶ 7c, 7d, 7e, 10a.) Neither the complaint itself, the Mother Letter, nor the Krieger Letter are available to offer at trial, and Plaintiff's mother's dementia renders her unable to testify.

## II.    Legal Standard

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006).[3] "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

III.   **Discussion**

    A.   **Title IX Claim (Count 4)**

Under Title IX, "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has recognized an implied private right of action under Title IX, which "encompass[es] teacher-on-student hostile educational environment sexual harassment." *Hayut v. State Univ. of New York*, 352 F.3d 733, 750 (2d Cir. 2003). To succeed on such a claim, the plaintiff must show "actual notice to a school district official" of the sexual misconduct and "deliberate indifference" by the recipient of the notice, who must "at a minimum" have "authority to address the alleged discrimination." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998). The "knowledge of the wrongdoer himself is not pertinent to the analysis" of a school district's actual notice. *Id.*

---

[3] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

### 1.    Actual Notice

"There cannot be [Title IX] liability based on constructive notice or circumstances not actually known to a defendant, even if he reasonably should have known about them." *Bliss v. Putnam Valley Cent. Sch. Dist.*, No. 7:06-CV-15509, 2011 WL 1079944, at *5 (S.D.N.Y. Mar. 24, 2011). Thus, "[r]equiring actual, as opposed to constructive, knowledge imposes a greater evidentiary burden on a Title IX claimant." *Hayut v. State Univ. of New York*, 352 F.3d 733, 750 (2d Cir. 2003). However, "a showing that the defendant 'should have known' can, in some circumstances, create an inference—at least sufficient to raise a genuine issue—that the defendant *did* know." *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999). Applying the actual notice standard, the Supreme Court found in *Gebser* that inappropriate comments by a teacher during class were insufficient to "alert the principal to the possibility" that the teacher was in a sexual relationship with a student. *Gebser*, 524 U.S.  at 290. Courts have since interpreted *Gebser* to require that "the conduct that allegedly put the administration on notice and the conduct ultimately at issue in the litigation must be sufficiently similar to find liability." *Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 639 (E.D.N.Y. 2013) (quoting *Bliss*, 2011 WL 1079944 at *6).

Defendants argue that they did not have actual notice of any abuse because there had been no sexual contact between Plaintiff and Defendant Krieger at the time Plaintiff's mother made a complaint to the school. (Defs.' Mem. at 11.) Defendants assert that the Krieger Letter cannot serve as the basis of actual knowledge because of the discrepancy between concerns raised by the encouragement offered by Krieger in the letter and the actual abuse that occurred later. (*Id.*) Plaintiff asserts, however, that a genuine issue of material fact exists as to whether plaintiff's mother's report raised the prospect that Plaintiff was at risk for sexual abuse by Krieger based on the "significant concern" expressed in Mother's Letter about the mother's own past experiences of sexual abuse and the concern about the relationship

between Krieger and Plaintiff. (Pl.'s Mem. at 8.) When coupled with the school's initial response to the complaint, which was to transfer Krieger to another school, Plaintiff contends that the facts provide circumstantial evidence on which jurors could find that the complaint raised the risk of sexual abuse. (*Id.* at 8-9.)

Because the complaint was made before any sexual abuse occurred, the Court must assess whether its contents were similar enough to the ultimate conduct at issue to create an issue of material fact as to whether Defendants had "actual knowledge" of the potential for its occurrence. Whether the facts of a case rise to the level of providing actual notice of the risk of future sexual misconduct often turns on whether the record shows that the inappropriate comments or conduct had sexual or romantic overtones. For example, in *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387 (E.D.N.Y. 2005), the court found actual notice when the assistant principal knew the teacher gave one of the plaintiffs "a card, a teddy bear and chocolates in a heart shaped box" on Valentine's day, that one of the plaintiffs "had developed a romantic crush" on the teacher, and that the teacher had written a letter in which he told plaintiff he missed her "smile, your beautiful eyes, your laughter, your touch." *Id.* at 393-394; *compare with Doe v. Flaherty,* 623 F.3d 577, 584 (8th Cir. 2010) (finding insufficient for actual notice inappropriate text messages from a teacher to female students asking "Are you drunk yet?" and "OMG you look good today," and a conversation where a school official was told that plaintiff "might have a crush" on the teacher and was asked whether "something was going on" which "did not go so far as to suggest actual sexual conduct or sexual abuse" when no one alleged "any physical conduct" between the teacher and plaintiff).

The record here, however, resembles *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 774 (5th Cir. 2020), where the student's mother learned that the student missed a class period because she was in the teacher's office, and "received notices from teachers about

[the student] exhibiting concerning behavior and performing poorly on assignments." The mother met with the assistant principal, the teacher, and a third teacher, expressing concern that "her daughter was discussing 'personal family matters' with both teachers and 'becoming too close to both of them.'" *Id.* at 774. At the time, no one suspected sexual abuse, and the Fifth Circuit upheld a grant of summary judgment because "there was no mention that anything of a sexual nature might be occurring," and thus "no[] evidence from which a jury could conclude that [the defendant] knew of a substantial risk of such abuse." *Id.* Similarly here, the record does not reflect that the school was notified of a risk of future sexual intimacy between Plaintiff and Krieger. Plaintiff's assertion that her mother's complaint *likely* included "concern that the undue attention . . . was sexually motivated" based on the Mother's Letter is extremely speculative. Without any documentation of the complaint's content or any witness with direct knowledge who could testify to the complaint's contents, there is nothing upon which a reasonable jury could find that the school had actual notice.[4] This lack of evidence is fatal to Plaintiff's claim.

Therefore, summary judgment will be granted to Defendants Board of Education and Ramos on Count 4 based on a lack of actual notice. Because Plaintiff cannot establish the first prong of her Title IX claim, the Court does not address the question of deliberate indifference.

## B.  Governmental Immunity for State Law Negligence (Count 3)

---

[4] Because Plaintiff never made a direct complaint to Ramos, who was not present for the meeting, the case for his actual knowledge is even weaker; it requires the Court to add yet another step to the inferential chain by assuming both that Plaintiff's mother's complaint explicitly raised the concern of a sexual relationship developing despite the lack of any evidence to establish that fact, and that Ramos was told of that specific aspect of the complaint by Dunlap despite his testimony that he was not told why a meeting was held between Krieger and Dunlap. While the Court must draw all reasonable inferences in Plaintiff's favor, it cannot make assumptions unsupported by the record.

"A municipality enjoys governmental immunity for common-law negligence unless a statute has limited or abrogated that immunity." *Hughes v. City of Hartford,* 96 F. Supp. 2d 114, 120 (D. Conn. 2000). Conn. Gen. Stat. § 52–557n is one such abrogation; under § 52–557n, a "political subdivision of the state" is immune from liability for the "negligent acts or omissions which require the exercise of judgment or discretion[,]" Conn. Gen. Stat. § 52–557n(a)(2)(B), but is not immune from liability for "ministerial acts performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." § 52-557n(a)(1). A "board of education is a political subdivision for purposes of § 52–557n," and governmental immunity also extends to its agents such as Defendant Ramos. *Doe v. Westport Bd. of Educ.*, No. CV085015710S, 2012 WL 1004308, at *3 (Conn. Super. Ct. Feb. 29, 2012); *Doe 1 v. Bd. of Educ. of Town of Westport*, 213 Conn. App. 22, 48 (2022) (affirming the district court's finding that all defendants, including both the board of education and its agents such as vice principals, superintendents, and teachers, were entitled to governmental immunity.) To establish the applicability of § 52-557n(a)(1), "a plaintiff ordinarily must point to some statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, *by its clear language*, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion. . . . In contrast, descriptions of general practices or expectations that guide an employee's exercise of discretion do not create a ministerial duty." *Doe v. Madison*, 340 Conn. 1, 31–32 (2021). A discretionary act is one that "requires the exercise of judgment." *Coe v. Board of Education,* 301 Conn. 112, 118 (2011).

Plaintiff conceded at oral argument that there are no ministerial duties that would abrogate governmental immunity in this case, and the Court concurs; "extensive and near-unanimous precedent in Connecticut clearly demonstrates that . . . the failure to . . . supervise, control and discipline" such as Plaintiff alleges "are discretionary acts as a matter of law."

10

*Hughes v. City of Hartford,* 96 F. Supp. 2d 114, 120 (D. Conn. 2000); *see also Schwartz v. Palmer,* No. LLICV195011468S, 2020 WL 2520631, at *5 (Conn. Super. Ct. Apr. 27, 2020) (finding that the "supervision of students, implementation of school policies and the control and management of a school and its students" were all discretionary duties); *Negron v. Ramirez*, No. CV095013686, 2011 WL 2739499 at *5 (Conn. Super. Ct. June 10, 2011) (finding that a sexual harassment and anti-bullying policy did not create ministerial duties because they "merely provide[d] vague goals and guidelines in promoting a school environment free from sexual harassment and bullying" rather than creating a clear directive.)

Plaintiff argues, however, that governmental immunity is not fatal to her claim because she was an "identifiable victim subject to imminent harm," which is also an "exception to the discretionary act immunity claimed by the defense." (Pl.'s Opp'n at 11.) Plaintiff asserts that based on her mother's complaint to the school, the jury could "reasonably determine that Krieger was so likely to continue to groom the plaintiff and sexually exploit the plaintiff that Dunlap and Ramos had a clear and unequivocal duty to act," especially in light of the "initial determination" that Defendant Krieger should be transferred from Norwalk High School to a different school. (*Id.* at 11-12.) Defendants respond that because it remains unknown what information "may have been passed on" by Plaintiff's mother, the known information was "insufficient to create a duty such that the Defendants had an unequivocal duty to act," because it showed no danger was "imminent." (Def.'s Reply at 22.)

The "identifiable person-imminent harm exception" to governmental immunity "has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." *Haynes v. City of Middletown*, 314 Conn. 303, 313 (2014). Schoolchildren who are on school grounds qualify as "identifiable victims" in Connecticut. *St. Pierre v. Plainfield*, 326 Conn. 420,

11

436 (2017). "[T]he proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." *Haynes,* 314 Conn. at 322–23. As for determining whether the harm is apparent, the test "is an objective one" in which rather than examining the record on "actual knowledge," the court must assess "whether the circumstances would have made it apparent to a reasonable school official that harm was imminent." *Doe v. Torrington Bd. of Educ.*, No. 3: 15-CV-00452 (MPS), 2017 WL 3392734, at *8 (D. Conn. Aug. 7, 2017). The harm "must not be latent or otherwise undiscoverable by a reasonably objective person in the position and with the knowledge of the defendant." *McCarroll v. East Haven*, 180 Conn. App. 515, 524 (2018).

Most significantly, Plaintiff cannot show that the harm was imminent because Defendant Krieger's alleged inappropriate behavior as a teacher alone does not establish imminence; there must be some indication that there is an immediate, actionable risk of sexual harm that the school or its proxies are obligated to prevent.[5] *See Town of Madison,* 340 Conn. at 38 (holding that even when a teacher was observed by other teachers and school staff dressing in a manner "inappropriate for an educational setting," regularly summoning students to her classroom for one-on-one meetings, and having flirtatious

---

[5] It is also doubtful that Plaintiff could show that the harm was apparent to Defendants. *Compare Doe v. Petersen,* 279 Conn. 607, 610, 903 A.2d 191, 194 (2006) (finding the harm of a sexual assault was not apparent to an official when the plaintiff said that she needed to talk to the official about "something that happened" between herself and Defendant, and that he "offered a ride home, only he didn't take me home," but did not tell the official that she was sexually assaulted) *with Doe v. Montville Bd. of Educ.*, No. KNL-CV-19-5020098-S, 2022 WL 18110183, at *2 (Conn. Super. Ct. Dec. 9, 2022) (risk of harm was apparent when other teachers and guidance counselors were told of rumors that plaintiff was in a sexual or romantic relationship with the teacher). However, because Plaintiff's claim fails on the imminence prong as well, the Court does not decide whether there is a material factual dispute as to whether the harm was apparent.

interactions with football players, there was no reason for anyone at the school to believe she was "*imminently* about to engage in an illegal sexual relationship with any student"); *see also Martocchio v. Malarney*, No. CV166013257S, 2018 WL 3060514, at *12 (Conn. Super. Ct. May 31, 2018) (holding that the school's awareness that a certain classroom was used as a "make out" spot was insufficient to put the school on notice of any imminent dangerous condition—i.e., the sexual assault of a student by another student while unsupervised by teachers in that classroom).

Courts have found "imminent harm only in the clearest cases," and the facts Plaintiff presents fail to meet that high bar. *Cotto v. Bd. of Educ. of City of New Haven*, 294 Conn. 265, 276 (2009). Defendants Board of Education and Ramos are granted summary judgment on Count 3 based on their governmental immunity.

### C. Respondeat Superior (Count 5)

Defendants argue that Plaintiff's claims based on a theory of respondeat superior cannot proceed because they are also barred by governmental immunity. (Defs' Mem. at 22.) Plaintiff does not defend her respondeat superior claims in her opposition, and Defendants maintain that Plaintiff has now abandoned them. (Def.s' Reply at 23.) Even if the Court does not consider them to be abandoned, "[a] municipality enjoys governmental immunity for common-law negligence unless a statute has limited or abrogated that immunity," *Hughes v. City of Hartford,* 96 F.Supp.2d 114, 120 (D. Conn. 2000); *see also Miner*, 126 F. Supp. 2d at 196 (holding that a theory of respondeat superior liability "must be dismissed" based on governmental immunity). In the absence of evidence demonstrating an exception to governmental immunity, Plaintiff's respondeat superior claim necessarily fails.

Defendants Board of Education and John Ramos are granted summary judgment on Count 5.

### IV. Conclusion

13

Defendants Board of Education and Ramos' Motion for Summary Judgment [Doc. # 35] is granted on Counts 3, 4, and 5. Counts 1 and 2 against Defendant Krieger remain.  The remaining parties' joint trial memorandum is due 30 days from this ruling.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 31st day of January, 2023